**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_Tanica Ruffin_

_(In the space above enter the full name(s) of the plaintiff(s).)_

- against -

_Turning Point, Inc_

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2019 OCT -9  P 12: 12

**COMPLAINT**

Jury Trial: ☑ Yes ☐ No

(check one)

_(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)_

I.      **Parties in this complaint:**

A.      List your name, address and telephone number. Do the same for any additional  plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff       Name              _Tanica Ruffin_
                Street Address    _410 10th Avenue_
                County, City      _Passaic, Paterson_
                State & Zip Code  _NJ 07514_
                Telephone Number  _(973) 914-8334_

B.    List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1

Name _Christian Castano_

Street Address _680 Broadway Ste 104_

County, City _Passaic, Paterson_

State & Zip Code _NJ 07514_

Defendant No. 2

Name _Turning Point, Inc_

Street Address _680 Broadway Ste 104_

County, City _Passaic, Paterson_

State & Zip Code _NJ 07514_

Defendant No. 3

Name _____

Street Address _____

County, City _____

State & Zip Code _____

Defendant No. 4

Name _____

Street Address _____

County, City _____

State & Zip Code _____

## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal Questions          ☐ Diversity of Citizenship

☑ U.S. Government Plaintiff   ☐ U.S. Government Defendant

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _Is Turning Point, Inc in compliance w/ the Federal law against Discrimination and hostle work environment (Retaliation)_

- 2 -

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _*New Jersey*_

Defendant(s) state(s) of citizenship _*New Jersey*_

**III.    Statement of Claim:**

State as briefly as possible the facts of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? _*Employment*_

B.    What date and approximate time did the events giving rise to your claim(s) occur? _*There are a series of events that occurred. (Please see attachment of documentation presented to the EEOC)*_

| | |
|---|---|
| **What happened to you?** | C.    Facts: *Discriminatory acts in which created a nasitie work environment.* |
| **Who did what?** | *Christian Castano, Direct supervisor and Director of Admissions is the perpetrator of the aforementioned.* |
| **Was anyone else involved?** | *Yes, there were other employees that experienced discriminatory within the agency of Turning Point, Inc.* |
| **Who else saw what happened?** | *Attached is a list of witnesses that experienced such discriminatory that was presented to the EEOC.* |

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

To provide clarity and on Said compliant and Compensate me for pain and suffering and possible pay that I was deprived of.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _9th_ day of _October_ _____, 20 _19_ .

Signature of Plaintiff _____

Mailing Address _____ 410 10th Avenue
Paterson, NJ 07514

Telephone Number _(973) 914-8336_

Fax Number *(if you have one)* _____

E-mail Address _ruffin tamica@gmail.com_

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff _____



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Newark Area Office**

Two Gateway Center, Suite 1703
283-299 Market Street
Newark, NJ 07102
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Newark Status Line: (866) 408-8075
Newark Direct Dial: (973) 645-4684
TTY (973) 645-3004
FAX (973) 645-4524
Website: www.eeoc.gov

Tamica Ruffin
410 10th Avenue
Paterson, NJ 07514

Re: EEOC Charge Number: 524-2018-01642
Ruffin v. TURNING POINT

Dear Miss Ruffin,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the information and evidence you submitted. You allege you were discriminated against because of Race-Black/African American

Respondent's position statement has been previously shared with you. Your rebuttal to this position statement has also been received and analyzed.

Based upon this analysis the Commission is unable to conclude that the information establishes a violation of federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge with 90 days of receipt of said notice. Otherwise, your right to sue will be lost. Please contact Investigator Luis E. Olivares at (973) 645-6012 if you have any questions.

Sincerely,

**JUL 1 1 2019**
_____
Date

John Waldinger
Area Office Director

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:     **Tamica Ruffin**
    **410 10th Avenue**
    **Paterson, NJ 07514**

From:   **Newark Area Office**
    **283-299 Market Street**
    **Two Gateway Center, Suite 1703**
    **Newark, NJ 07102**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **524-2018-01642** | **Rayba Watson,** **Enforcement Supervisor** | **(973) 645-6021** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____        JUL 1 1 2019

**John Waldinger,**
**Area Office Director**

Enclosures(s)

(Date Mailed)

cc:     **Colette Davenport**
    **Director of HR**
    **Turning Point**
    **680 Broadway**
    **Paterson, NJ 07514**



   Welcome, Tamica   Log Out

Filing with EEOC



# My Charge

**EEOC Number: 524-2018-01642**                    **Status:**

The charge of employment discrimination filed on **2018-11-18** with the U.S. Equal Employment Opportunity Commission (EEOC) by **Tamica Ruffin** against **TURNING POINT** is available for you to view online

### Your Charge is Closed

Your charge was closed on 07/11/2019 . You may continue to view information and documents about this charge for up to 90 days after 07/11/2019 . If you have **not** already saved copies of the documents about this charge, **be sure to download and save them as soon as possible.**

### Notice of Right to Sue - Important Time Limit

If you choose to file a lawsuit against the respondent(s) named in your charge, you must file a complaint in court **within 90 days of the date you received the Notice of Right to Sue. If** you fail to file within the 90 day period, your right to sue on the charge will be lost and cannot be restored by EEOC. For more information about this time limit and filing a lawsuit, refer to the enclosure that was provided with your Closure Notice/NRTS.

### Position Statement Requested

EEOC has received your request for the respondent's Position Statement. EEOC will notify you by email when the Position Statement is available for you to review.

# My Documents

If you have documents supporting your charge, please upload them using this portal. Documents that you send and any that EEOC may send to you (including your Charge of Discrimination and the respondent's Position Statement, if you request a copy) are listed below. You can open a document to review it or download and save it.

**Be sure you save all documents related to your charge, including Email correspondence.** Your charge and documents related to it will be available to you online until 90 days after EEOC closes it.
Click using this portal to upload documents.

### Upload

| Name | Type | Added On | Added By |
|---|---|---|---|
| Signed Charge Of Discrimination.pdf | Charge of Discrimination | 11/18/2018 | Charging Party |
| Scanned from a Xerox Multifunction Device-1.pdf | Closure Notice/NRTS | 07/11/2019 | Luis Olivares |
| Staples Scan 06-18-2019_18-42-29-925.pdf | Response to Position Statement | 06/19/2019 | Charging Party |
| Witnesses EEOC.docx | Evidence from witnesses provided by CP | 06/19/2019 | Charging Party |

| | | | |
|---|---|---|---|
| Staples Scan 06-18-2019_18-39-42-645.pdf | Response to Position Statement | 06/19/2019 | Charging Party |
| Staples Scan 06-18-2019_19-11-15-367.pdf | Response to Position Statement | 06/19/2019 | Charging Party |
| Response to EEOC.docx | Response to Position Statement | 06/19/2019 | Charging Party |
| Scanned from a Xerox Multifunction Device.pdf | Position Statement | 05/29/2019 | Luis Olivares |
| scan0003.pdf | Evidence from witnesses provided by CP | 02/13/2019 | Charging Party |
| FW.pdf | Evidence from witnesses provided by CP | 02/13/2019 | Charging Party |
| scan.pdf | Evidence from witnesses provided by CP | 02/13/2019 | Charging Party |
| EEOC .docx | Evidence from witnesses provided by CP | 02/12/2019 | Charging Party |

# Additional Information

**If you have questions**
You may find answers in the Frequently Asked Questions (FAQ)

If you still have questions about charge or the status of your charge, please contact your investigator directly at **luis.olivares@eeoc.gov**. Please use Charge Number **524-2018-01642** on all correspondence and communications.

**DOCUMENTED INCIDENTS**

On July 3ʳ 2017, Christian spoke with me in regards to June 30, 2017 productivity.  Christian states that how is it that Gus did 5 assessments and I had only one completed when Gus was on his 3ʳᵈ and at the end of the day I completed 6.  He informed me that someone told him. I informed him that when I went to escort my patient to the detox unit, that previous patient began speaking to me and inquired about Kassandra b/c she was the person that completed her assessment.  I informed patient that Kassandra was not available. Patient (Kim) began speaking to me about her not wanting to stay.  Detox Counselor Roslyn asked to come to her office to speak about the patient's concern.  However, Christian left early for a doctor's appointment that day and he was not at the office.  Christian informed me not I should not help with AMA's it's not my job to do so.

On October 30, 2017 around 3:57pm, Briana was denied by medical admissions to Turning Point, due to medical concerns and was unable to receive substance abuse treatment at TP.  I set up patient's transportation with Logisticare in which they were able to schedule patient with a LYFT.  I used my cell phone number to ensure that transportation was completed due to patient did not have a cell phone. Patient transportation was due to arrive in 5 minutes.  I gathered all patient's belonging and escorted her to the reception area and to the front of TP, due to the fact I got a text stating that the Lyft driver would arrive at 4:18pm.  Lyft had arrived and Briana reminded me that she did not have her wallet.  I rushed back into the building and into Christian office to retrieve her belongings.  I grabbed the bag out of the drawer of the file cabinet located in said office.  I rushed back to Briana and gave her the back and the paperwork for her to sign for, she did that and proceeded to the LYFT vehicle. As I began to proceeded to enter TP hallway area, Briana calling at me while running up to me and stated that the property that she had did not belong to her.  I, then looked at the bag and apologized and told her I would go get her property.  I looked into the bag and saw a small manella envelope marked $60 on it, I then looked into the envelope and did not see saw that it was empty.  I asked patient did she know where the $60 was that was supposed to be in the envelope.  Briana responded by saying she didn't see any money. I informed to her wait and I would be back.  I walked to the mid desk where Ms. Darthy and informed her of the incident she informed me not to give the patient her property until I speak with someone.  Ms. Darthy informed attempted to reach Heather via telephone and informed me that Heather was not here today.  I, then went to Collette office and she wasn't there.  When I arrived back to the reception area.  Patient was not present. I was told by the receptionist that Briana stated that she would be back.  However, patient did not return and left her property.  I walked back to the mid desk and informed Ms. Darthy that patient had left.  Ms. Darthy informed me to text Christian.  I immediately texted Christian and informed him at 4:45pm "Please call me...Emergency."

Around 4:50 pm on the date above Christian called me on Turning point phone and I informed him of what happened that I gave patient the wrong property and the patient money is missing from his property. Christian stated that he will be at TP in a few and that he has to speak with Collette in regards to this incident.

On October 30, 2017 @ 5:10pm, Christian asked me to come to his office in regards to incident that happened on 10/29/18 with patients Briana and Brian.  At 5:30pm, I overheard Christian and Collette speaking in his office.  I overheard Collette stated to Christian that we can't blame the client because we don't know and that this was the first time.  The door closed at 5:32pm and then the door reopened at 5:40pm and I overheard Christian say "I know, but we have to stop it from happening again."  Christian came to my office at 5:49pm and informed me that he might have to write me up for the incident.  I responded by saying "that's fine, I made the mistake."

On Oct. 31, 2017 at 5:36pm   Christian informed me that Collette made the decision was to give me a warning. I read the warning and I declined to sign.  Christian informed me that Collette wrote the warning notice. I informed him that I have some questions that needed to be discussed with Collette in regards to the wording of the warning notice.

On November, 1, 2017 around 10:02am, Christian, Collette and I spoke in regards to incident report.  Collette stated that she did not write warning notice and that Bob (CEO) and herself had approved the warning notice. I informed Collette that I did not agree to the warning notice because it appears to be insinuating a suspicion of me possibly took the money and I'm not going to be responsible for other incidents, especially when I was helping out by giving the ct. their things.  I told Collette that Christian had informed me previously that if the company continues to loose money that it would be taken out our check that's reason I told him that if they wanted to take the money out my check then that's fine. However, I was informed by a colleague due to my incident that not too long ago that a pt. reported that she was missing $100 and no one was written up for the incident. I informed Collette that I didn't have the issue with the written warning, I had issues with the wording and that I did not have to disclose what happened and Sandra and Bernadette could have taken the fall and nobody would have not known because I'm not responsible for ct.'s belongings, but I wouldn't do that. Collette advised Christian to omit that I offered to repay the loss money. Collette asked Christian was anyone reprimanded for prior incident.  Christian stated no. I thanked Collette and told her that I was not going to take responsibility for others lack thereof. I was already given a warning about my performance after my Probationary period and I was not provided training and that the only person helped me was my colleague Kassandra and she couldn't help me much b/c the Admission department was down 2 counselors when I started. Christian stated that John did not train her and he was responsible for that and I shouldn't have been written up for that. Collette stated "Oh, I wish you have me about that before."

On March 22, 2018 an email was sent to all counselors in regards counselor productivity. (Email will be included documents.

On April 12, 2018, I received an email at 9:14am that he wanted to speak with me in regards to Ayesha G.  Around 3:15pm Christian and I met when he informed asked me about the reasoning I would completed this client assessment knowing that she had suicidal ideations. I informed that she denied any suicidal ideations during the assessment and I believe that it was

documented in her assessment. I informed that I am aware that she stated that she had suicidal ideations earlier that day prior to coming to Turning point and that the client stated it is normal for her. Christian stated that she had been taking a few times to the hospital for said. However, she was admitted. I informed that she was referred from Mental health court and it would have been a good idea for him to have met with prior any counselor doing her assessment instead of myself being questioned about her mental state that was documented at the time. I also, informed him that I thought we were co-occurring treatment facility. Christian informed that the counselors might not be equipped for clients like her. I informed Christian that is not my fault and that if there was an issue at the time Nursing would have known or observed concerns and have him assess her prior to be assessed to an Admissions Counselor. Christian informed that Primary counselors were complaining about an Admission counselor that was taking clients out of group to speak to them. I informed him that I was not aware of this and that he should speak with the others admission counselors about this complaint. Christian also informed that Christina a newly hired employee felt as if she was doing too much work in the department. I stated "Ok." I felt like Christian was trying to insinuate that the Counselors from upstairs was complaining about me in some form or fashion and also I was confused about what he meant by Christina feeling like she doing too much work and she's in training and was hired to learn all components of the Admission Dept. from registration, patient navigation, assessments and operations.

On April 13, 2018 at 3:35pm, The day of Zac farewell lunch, I walked up to Mrs. Darthy whom was standing in the walkway in front of Administration Mid desk on the side where Sandra sits close to Christian office. I walked up to Mrs. Darthy to greet her and she stated "I'm glad I don't work back here no more with you" I stated isn't that a good thing as she looked and Christian with a smirk. This made me feel uncomfortable especially after the conversation Christian and I had in his office the day before.

On April 16, 2018 at 9:45am After completing Eric M. assessment, I gave the aforementioned his belongings to get dressed back into his clothing that he arrived in. Patient returned back to my office and gave me his cellphone that he found in his belongings and stated that he found it in his pocket. When I saw Isaiah and tried to speak to him in regards to the incident. He snubbed me, he appeared to be busy. So, I then walked in a hurry into Christian office, because I had the patient sitting in my office. I, then gave him the cell phone and told him that the patient found the cell phone in his pocket. Christian took the cell phone and said thanks.

On April 16, 2018 at 2:41pm, Kassandra came to my office and asked me did I take John P. I informed her I did not take the assessment and I think that Bernadette gave the assessment to Cristina O. and there was no email sent to notify us that an assessment was available. Kassandra stated that she knew that she did not see any email in regards to an assessment being available. I stated to Kassandra, this was I'm talking about, then he's going to be sending us emails stating that we are not being productive. I stated that I was going to Christian office to speak with him about this. Kassandra stated that she planned to do the same. I got up from my desk and walked towards Christian office and Kassandra stayed outside of the office at at

2:45pm, I entered the office informing Christian that I needed to speak to him in regards to productivity, availability of counselors and assessments. I informed him that I don't appreciate that we are sent emails creating narratives that the most of the counselors are not doing anything when you have assessments being given out to whomever and no emails being sent to notify all the counselors. I informed that I don't feel that it necessary to be racing to get to assessments first to fulfill some competitive quota in which we are aren't paid the same and expected to do the same job duties. This has been going on too long and people with high school diplomas with no experience being promoted. This doesn't make sense and then we are consistently confronted about who do more assessments. I stated "I'm personally not concerned about who do more assessments as long as the work gets done, I don't have any other choice." Christian did not say anything, however, continued to stare at me. Then I stated that "Whatever narrative you are trying to create don't waste your time, just do what you want to do, because it's becoming annoying and not a creating a good work environment" He still didn't reply, he just sat at his desk with his right hand up to his chin and then he said I will speak with Bernadette and I said "Okay, thanks" and exited his office. (The only two counselors that were aware of the protocol change was Zach and Christina both non black counselors).

On April 16, 2018 at 2:56pm Bernadette came to my office and ask could she speak to me in regards to what happened. Bernadette informed me that, Christina had made a mistake on John P., she completed his assessment under other John and so she gave Christina the other John, b/c she had to completed the assessment under the wrong John name. I informed her that it didn't really make sense b/c she had to close one assessment to complete the other. So, therefore she had two assessments back to back in which looks like she had completed 3 assessments and the rest of us just appearing like we are not doing any work while she appears to be doing all the work and how this has been happening too often. I informed that there was no problem with what she did if it wasn't intentional. However, my concern is that of the backlash the other counselors and myself was receiving in regards to the amount of assessments that certain counselors were doing and others were not. Bernadette apologize and stated she was not aware b/c she is not included in emails in regards to counselors and their assessments. I informed Bernadette that it doesn't appear that way b/c only Zach and Christina was the only two aware of the change protocol on how the assessments was being distributed and that no said anything knowing the rest of the counselors were leaving their offices and walking to the mid desk for assessments and no said anything and not too long afterwards we get an email about how Zach and Christina is doing all assessments and the rest of counselors aren't doing anything. Bernadette stated that Christian is suppose to inform you all of the changes that they made in regards to the availability of assessments. (What Bernadette stated was not true, the two clients were John P and Jonathan B in which there last names are not the same and in order to complete the assessment in NJSAMS system you have to search by last name and in addition the names on the chart).

On April 17, 2018 around 3:00pm, I was returning back from break I was confronted by Annette from PMP informing about the email that Christian sent to the PMP staff and specifically the email stated my name. I informed Annette that I gave Christian the cell phone and we did not

converse about what actually happened. I, assured Annette that she did not have anything to do with the cell phone and that I attempted to speak to Isaiah about the incident and he snubbed me. Annette informed me that Christian told her not to take it personal. Annette stated that she is taking it personal and what is the purpose to document the clients that they process. Annette stated that she was going to speak with Christian about the incident. Annette and I walked toward Christian where I saw him sitting at his desk. As Annette entered the office, I informed her if she needed me, just let me know. This email without my knowledge nor discussion of what actually happened in regards to the patient had cause another employee to feel that I was causing some issues within the department. (Email sent from Christian to PMP staff was 04/17/18 @2:36pm).

On April 26, 2018 at 5:27pm, Christian came to my office accompanied by Antonio F. to ask me if to have patient to sign mail mergers at my desk. At 5:28pm Patient Antonio F. informed me that Christian told him that he knows what they are looking for (meaning IME, the State) to get him approved for treatment if he doesn't get him approved then that's means that can't stay. Patient then proceeds to say that he apologizes for not being honest and that he tried to be honest he second time, but I told Christian to complete his assessment. I informed patient a second time that I had a meeting that I had attend, so I had the Program Director re evaluate him because he was the only person available to assist him.

On April 30, 2018 at 3:47pm, As I was about to enter the PMP, Brittany (Counselor Aide) waived hello. As I entered the PMP room Cristina O. was in the room what it appeared that she was getting clothing for a patient. I immediately left out and as I was leaving the PMP, Brittany called me and asked me was I okay and she just wanted to check up on me. I didn't inquire, however, it baffled me that she was aware of the incident.

On April 30, 2018, Augustus J. informed me that he received his CADC and showed me it on the Consumers Affairs. Augustus J. stated that he had received it a week ago.

On April 30, 2018 at 9:44am arrived at Collette office with Kim (Director of Nursing) whom walked towards Heather office. (Christina and Christian was there) Christina sitting in the chair close to the window and Christian was sitting in the chair across from Collette desk. As I approached Collette stated that we are going to have to meet in larger room Christian and Christina stood up, Christian left the office and went into Heather (Director) office with Kim (Director of Nursing) was located. At 9:47am Collette, Christina and Christian arrived in the Conference room where Collette stated that Heather will be attending the meeting also. At 9:48am Heather arrived. The meeting began and spoke about the incident with Christina and I. Collette asked to speak, I stated that Christina could begin. Christina stated that she held the door for me and as I was walking through with Charmaine another employee (Call center) that I bumped her and that she didn't know why and after the incident I came "Stumping to her office" Christina stated that she knew that was me b/c heard my shoes. Christina stated that she felt scared and b/c I was standing over her while she was sitting down. Christina stated that I could came into her office and sat down to speak with her. I, then spoke and stated that I did

not stump to her office and how would she know that was me coming to her office b/c there are many employees that wear shoes (heels) and that I did not immediately come to her office. I also, stated that I was not standing over her, I was outside her door and she sitting at her desk. I also stated that why would walk into her office and squeeze behind her to sit in a corner away from the door where her chair blocks the exit with a person that bump me and did not say anything. Collette began speaking about the meeting in which Christian, Christina and I had in regards the incident and how I left out the office upset before the discussion ended. I informed all the attendees that I left because Christina continued to insist that she was afraid and that I felt that she was trying to imply the "angry black women" and how she was so afraid when she bumped me and did not look back to acknowledge what happen and continued speak about I called her a little girl when she knew that I said she was acting like a little girl so I left b/c the discussion wasn't productive and I was the one who brought this situation to Christian attention and he was suggesting that we had problems prior to this incident in which I was not aware of, so I felt like that because they were same color and/or race I was not being heard. Collette asked Christian what he felt during the meeting. Christian stated that I didn't seem like it was not much of a concern and that Christina text him about the incident. So, I asked that he show us her text, he stated that he did not have his phone with him. Collette spoke about Turning point culture for the employees reading from the handbook about being polite to another, non discriminatory and that behavior is not tolerated within the agency. Collette asked any prior incidents leading up to this. Christina stated that I don't speak to her and that if I was speaking to someone in her presence that I don't acknowledge her. Christina stated that she spoke to Christian before about this and felt after an email that was sent that she felt that I was upset at her because she does more assessments than many of the counselors. I stated that we had never had a relationship where that we spoke to one another besides when I asked her if she wanted to sit in and observe me doing an assessment b/c she is new to the department and by the time we see each other most of the time we are busy working assisting clients. I also stated that I was not aware any issues between her and I b/c the last time we had I had conversation I came to her office to check-in on her b/c I observed that she felt uncomfortable with her DCI client and there was no problem and she agreed. I stated that the only thing that I was aware of is when Christian spoke to me in his office and I told me that Christina felt like she was doing more work. Collette asked how I felt about that, I responded "I didn't think nothing about it, b/c she was hired to learn all aspects of the Admissions." Collette then asked me how I feel about Christina and there was a problem, I stated "I don't feel anything she's my coworker and I have the problem with Christian b/c he knew about this and didn't say anything to me about it, now it makes sense" Collette began speaking about me calling her a little girl and her race that I should apologize. I stated "that I don't have a problem apologizing for saying she was acting like a little girl, b/c that probably make her feel some type of way since we work together" I, them apologize for the little girl statement. Heather stated that we can't speak about people's race b/c its not appropriate and this needs to addressed. I stated that I'm not apologizing about how I felt during that meeting just like she's didn't apologize for how she felt about what happened and I don't play the race card for no reason. Collette stated that we should be greeting on another in the workplace. I stated that "We should but a lot people don't, and it wasn't ever a big deal (issue) before" And maybe she

should have this talk with all of Turning point employees.  As we was closing the meeting, Collette asked if anyone had anything to say.  Christina stated "I would like if she not be called a little girl and not speak of her race again." I stated, that "Here we go, I just apologize for the little girl statement and she brings it up again, it's over." Heather then stated "she's only saying her closing." I stated "I'm closing out with I don't understand the witness that Christina was not allowed into the meeting to discuss the incident." Collette stated "I will reaching to Kassandra soon." Heather stated "Not today this was too much for the day."  Meeting ended at 11:12am

On May 1, 2018, Augustus J. stated that he had an interview with Abby.  I spoke with him about him being unsure of accepting the job offer.  I informed that he should take the position if he's going to compensated for his education.  Gus stated, "Well, I have to run it pass the wife."

On May 3, 2018 around 12:11pm on or about Stephen D. (Call center Mgr.) as I was passing on another (walkway past each other) where he put his arm out (suggesting this is my space and that's yours) and said Ha funny as I entered into the nurses' office located in the Admissions dept. in which I briefly mentioned what Steve did to Bonita (Nurse) and she just shook her head in disbelief.

On May 3, 2018 (11:42am-12:05pm) I went to Collette office (HR) in regards to my vacation time and how I felt that I was being retaliated against b/c I submitted a vacation day request on 04/19/18 for 05/18/18 and the same day of the meeting (04/30/18) later day he denied my vacation and he worked with me the entire day and left the Admissions dept. exiting towards the reception area around 5:00pm and returned around 5:30pm and did not say anything and around 7; however, I received an email denying my vacation and with email the next morning stating that there were 5 other staff members that requested that same day off so he was unable to grant me that day off.  On May 01, 2018, I spoke with both Bernadette and Sandra they informed that they had not requested any days off. I informed Collette that I understand that the only people that requested that day off is Christina and Isaiah b/c I saw their names on the calendar. Also, Derrick and Kassandra has requested days off in May, however, it was during the week before and that I don't understand how one counselor and an operation tech have anything to do with me having that day off when Derrick and Kassandra was approved for the same day off. Collette informed that she would speak with Christian and she will get back to me.

On May 4, 2018 at 9:04am, I received an email from Christian granting my request for vacation; However, he included Bernadette another employee approval on vacation day in which whom previously informed me that she had not requested any days off during that time.

On May 5, 2018 at 3:10pm I asked Bernadette was Jacqueline P. ready.  Bernadette stated that "We're waiting on medication list."  Kim (Director of Nursing) walked up to the mid desk standing on the side of the desk close to the break room door and stated "Who's going to take Jacqueline P." Bernadette stated "Cristina" as Cristina was approaching the mid desk.  I walked away and entered my office across from where the mid desk is located. I left my office around

3:50pm and returned 4:10pm and observed Jacqueline P. being interviewed by Gus J. Later, I was told that Christina could not stay b/c she had to leave.  (Christina is considered a full-time employee, However, she frequently leaves early and assessments are held for her, so that she completes a certain amount of assessments so that she leaves early and it appears that the rest of the seasoned counselors aren't doing anything throughout the day).

On August 1, 2018 @10:27am Kassandra informed that Sandra, Bernadette and Christina was signed up to have Medicaid certification.  Besides Sandra and Bernadette (Registration staff) no other counselor was offered the opportunity to do so. (Non black employees).

On September 25, 2018 at 5:12pm, Christian came into my office and asked me about how am I doing and what has happened with my job performance.  I informed him that I have been overwhelmed with the lack of support, disorganization and the lack of accountability.  And that it has been wearing me down with anxiety and that I think I need to go to therapy.  Christian stated that that might be a good idea.  He asked me about my health, informed that I still have the same issues, I have to remove the tumors from my breast. Christian stated we spoke about and that I should take care of my health.  Christian also stated his plans on taking a vacation and his possible last day at Turning point.  I asked if had another job, he stated that he had a couple of things lined up.  Christian stated well I see that you haven't had as many issues with IME with assessments being hold. I stated, I know thanks to Mars and her helping me out with my assessments.  Christian stated I know she asked if you wanted to work for them.  I informed him that I've had interviews with Rutgers about a new program they are working on a while ago.  Christian stated "It's hard to get into Rutgers, I applied and I couldn't get a interview, your resume must be good."  Christian stated that he felt that my performance at work has declined and that he wants to meet with tomorrow in regards to a written warning.  I informed him that I would meet with him first thing in the morning, he agreed.

On September 25, 2018 at 6:53 pm, I received a text stating the following: "It saddens me to see you this way.  I really wish I could help spark that desire for you again with work. See in the morning first thing, so I can review what I mentioned to you in regards to the written warning. Get home safe in the flood. Remember what are you going to do today to improve your overall health" I replied at 8:31pm "Interesting concept, However I see you first thing in the morning."

On November 07, 2018 around 1:20pm, I just completed Steve C. in which was not appropriate for out program and needed a lower level of care. As, I was exiting my office Steve D (Call center mgr.) to speak with Christian and Steve was standing outside my office. He asked me was the client admitted, I informed him that he was not appropriate and I called IME and an employee name Lauren informed me she could speak to me about the client unless I send a formal request in writing after speaking with Jim B. her Supervisor due to an incident that happened prior. However, I informed him that the client spoke with his parents and they are willing to pay for treatment and I wanted the client to speak with Christian in regards to the costs. Steve D. stated "I guess I got Jim in trouble."

On November 8, 2018 at 9:52am, Christian and I had a meeting in regards to a training with ASAM at Rutgers. Christian spoke to me about Telepsych, Risk Ratings, IME screenings, Clinically/Medical-Monitoring and 5 levels of Detox. Christian also mentioned that he met Jim B, Mars B. and David P from IME and that Jim asked him was if they were good. However, throughout the meeting he mentioned that Tom Brady was emailed by the Director of IME Rutgers in regards to myself creating a hostile relationship with a provider and that I will have to written up and placed on 30-days probation in regards to this incident. I did not agree with the write up and requested that Tom Brady, his immediate Supervisor Heather and Human Resources Collette in regards to this incident and that would like a copy of all documents including the email that was sent. Christian informed that he would forward me the email and make a copy of the write up. (Christian have not given me a copy or sent me a copy via email nor have any of the aforementioned discussed the matter). The incident that Christian was speaking of was the situation that Steven D. caused in which I had no knowledge of until Nov. 7th2018. However, as you can Christian was aware of the incident prior to making the decision to write me up and place me on Probation for an incident, I have no knowledge and had nothing to do with me.

On November 12, 2018 at 9:47am, I walked into the Call center to make a copy of the day's schedule and Stephen D. said hello and then stated "Jim don't like you" I stated "I suppose, but I spoke with IME the other day." Steve stated "You know why b/c he got in trouble for the client being in the hospital" I stated "I don't why b/c the client was not appropriate for this level care." Then I exited the call center. (This conversation was in regards to an assessment I completes on 10/24/18 with Timothy.

On February 7, 2018 at 10:06am, I spoke with Kassandra whom informed me that she was offered a position as Primary Counselor by Abby the Director of Residential and that she heard that Derrick Hurd was also offered a position as a Primary Counselor. The aforementioned are the two African Americans Admissions Counselors other than myself that was overlooked prior to my complaint being filed.